IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **YARNELL SINCLAIR FOWLER,**<br>Plaintiff,<br><br>v.<br><br>**CITY OF PHILADELPHIA RECORDS DEPARTMENT, JAMES LEONARD, ESQ, LINDA YERKOV, ELIZABETH DOWNEY, BRIAN ALBERT AND LINDA F. TOWNSEL,**<br>Defendant. | **CIVIL ACTION**<br><br><br><br>**NO. 16-6700** |

## MEMORANDUM OPINION

When his probationary term of employment as a Data Service Support Clerk in the City of Philadelphia Records Department Police and Fire Reports Unit ended, Plaintiff Yarnell Sinclair Fowler, an African-American man, was not hired for a permanent position. He has sued his former employer and various city employees for gender and race discrimination in violation of Title VII and the Pennsylvania Human Relations Act ("PHRA"); for aiding and abetting a violation of state law; for violations of his Procedural Due Process rights under the Fourteenth Amendment; and for violations of his Equal Protection rights under the Fourteenth Amendment and Section 1981.[1] Defendants now move for summary judgment on all of Plaintiff's claims. Defendants' motion shall be granted.[2] Plaintiff also sought summary judgment on his Procedural

---

[1] In his motion for summary judgment, Plaintiff withdrew his claims that all Defendants retaliated against him for engaging in protected conduct in violation of the First Amendment; and, that all Defendants violated his right to privacy.

[2] Defendants make arguments that: (a) Plaintiff's claims under 42 U.S.C. § 1981 must be dismissed because § 1981 does not provide a cause of action against state actors such as the City of Philadelphia; and (b) that Plaintiff's Equal Protection claims brought pursuant to § 1983 must be dismissed because Plaintiff has failed to show evidence of similarly situated comparable parties. Although Plaintiff makes passing reference to Section 1981 and Section 1983, his brief, even generously construed, contains no case law or discussion in contravention of Defendants' arguments. Accordingly, any opposition to such argument is waived and summary judgment shall be granted on these claims. *Valentin v. Attorney General of U.S.*, 386 F. App'x 279, 282 (3d Cir. 2010) ("Because no argument is presented . . . we deem the issue waived.").

Due Process claim, which shall be denied.

I. **Legal Standard**

Summary judgment must be granted to a moving party if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). Material facts are determined by reference to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party must show where in the record evidence a genuine dispute exists and not merely deny the moving party's pleadings. *See id.* Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

II. **Analysis**

A. **Title VII & PHRA Discrimination Claims; Aiding & Abetting**[3]

Plaintiff's Title VII and PHRA claims, which are premised on gender and race discrimination, are analyzed under the burden shifting framework of *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841-42 (3d Cir. 2016) (collecting cases); *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3, 318-19 (3d Cir. 2000) (considering race and gender discrimination; stating "analysis required for . . . PHRA is identical to a Title VII inquiry.").

This framework first requires Plaintiff to establish a prima facie case of discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). The elements of a prima facie

---

[3] A claim of aiding and abetting is unsupportable without a primary violation of the PHRA. *See Elmarakaby v. Wyeth Pharm. Inc*., 2015 WL 1456686 at *9 (E.D. Pa. March 30, 2015). Given the following analysis, Defendants' summary judgment motion on this claim shall be granted.

2

case are: "(1) that [plaintiff] is a member of a protected class; (2) that [plaintiff] is qualified for the position; [and] (3) that [plaintiff suffered some form of adverse employment action] (4) under circumstances that give rise to an inference of unlawful discrimination." *Id*. at 410-11 (internal citations omitted). To establish these elements, the evidence Plaintiff offers "must be sufficient to convince a reasonable factfinder to find all of the elements of the prima facie case." *See Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (discussing Title VII gender discrimination at the summary judgment stage).

Should Plaintiff succeed in establishing a prima facie case, the burden then shifts to the Defendants to articulate a "legitimate nondiscriminatory reason" for the adverse employment action. *Jones*, 198 F.3d at 412. To prevail after Defendants articulate that reason, Plaintiff must show that such reasons are pretextual and that discrimination was the real reason for the adverse action, *id*. at 412-13, by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably disbelieve either (1) the employer's articulated legitimate reasons; or (2) believe than an invidious discriminatory reason was more likely than not a [but for] cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### i. Prima Facie Case

Plaintiff satisfies the first element of the prima facie case because he is in two protected categories: Race – he is African-American; and gender – he is male. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (males as well as females are protected against discrimination).

There is some question as to whether he satisfies the second element. Although he passed the requisite civil service examination and was, thus, qualified for the probationary position when he was hired, Defendants contend that his work during the probationary period illustrates that he was not qualified to be hired to the permanent job. Whether Plaintiff was

3

qualified is determined by objective criteria – did he meet the "standard of performance expected of all [Data Service Support Clerks?]" *Weldon v. Kraft, Inc.,* 896 F.2d 793, 799 (3d Cir. 1990). According to Defendants, Plaintiff was often late to work – at least twenty one times during his probationary period; he worked overtime alone when he was told not to; and he failed to follow simple instructions.

Plaintiff's challenges each of these reasons. With respect to tardiness his supervisor raised the issue within his first week of probationary employment and documented her concerns in a June 17, 2016 memorandum. The memorandum catalogs numerous occasions when he arrived late to work and notes that "punctuality" is "vital to [Plaintiff] obtaining permanent employment in the Records Department." In his deposition testimony, Plaintiff blames his lateness on a faulty punch clock. However, although there was a system in place to address such issues, he could not recall having ever reported any malfunctions at the time they occurred. Further, there is nothing in the record to suggest he took issue at the time with his supervisor's concerns regarding his lateness. With respect to overtime: there is some dispute as to whether he – contrary to specific instructions – ever worked overtime alone. With respect to his failure to follow simple instructions: Defendants' evidence is that when Plaintiff was told to organize and staple reports by date in order to make the reports easier to access he responded that he would "do it his way." Further, he often failed to scan the reports into the system as required. Plaintiff's response in his deposition was not to deny that he did not follow directions but to avoid the question: "I have had much more responsibility on my shoulders than stapling some reports that I think I can follow those directions." Plaintiff also points to a number of positive customer reviews of his work – but these are subjective issues that do not go to the central issue of whether Plaintiff was qualified for the job he sought.

Given that he was clearly advised that punctuality was a benchmark for permanent employment and yet was often late, and that he declined to follow simple instructions, it follows that Plaintiff was not qualified for the permanent job he sought. There is, thus, no reason to continue further through the *McDonnell Douglas* burden shifting framework and Defendants' motion for summary judgment on his Title VII and PHRA claims shall be granted with respect to the permanent position.

Plaintiff, on his claim that overtime was denied to him, established the third element as denial of overtime is an adverse employment action. And, this occurred under circumstances that could – though thin – give rise to an inference of discrimination: he was the only male employee and the only employee barred from overtime. Thus, the burden shifts to Defendants to offer a legitimate and non-discriminatory reason for denying Plaintiff overtime.

### ii. Nondiscriminatory Reason & Pretext

Defendants claim Plaintiff worked overtime alone contrary to specific instructions. Plaintiff argues that Defendants have a shifting rationale for denying him overtime in that in her deposition his former supervisor suggesting that she barred him from working overtime because he was "disrespectful." There is no inconsistency in Defendants' explanations for the denial of overtime – disrespect, in this context, is another side of the same coin of acting contrary to specific instructions of a supervisor. Thus, Defendants' proferred reasons are not pretextual. *See Hoechstetter v. City of Pittsburgh*, 79 F. App'x 537, 539-40 (3d Cir. 2003) (finding pretext was not established because there was no inconsistency in the Defendants' reasons nor a wholesale exchange of one set of reasons for an entirely unrelated set). Here, not allowing Plaintiff to work overtime because he was disrespectful when his supervisors attempted to address whether he worked overtime alone is not unrelated to or inconsistent with the Defendants' proffered reason.

Thus, Plaintiff's claim for discrimination in receiving overtime also fails under the *McDonnell Douglas* framework.

## B. Procedural Due Process Claims

Both Defendants and Plaintiff moved for summary judgment on Plaintiff's Procedural Due Process claim. Plaintiff's claim is premised on Defendant's failure to provide performance reports that the Civil Service Regulations require at the end of the second and fifth month of work for probationary employees. Plaintiff's claim survives only if he has a constitutionally-protected property right to those performance reports. *See Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 482 (3d Cir. 2014) (analysis of procedural due process claims proceed first by determining whether the asserted interest is one within the scope of the "liberty or property language of the Fourteenth Amendment."). Property interests are derived from "an independent source such as state law," such as ordinances or contracts. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Bishop v. Wood*, 426 U.S. 341, 344, 344 n.6 (1976) ("A property interest in employment can, of course, be created by ordinance or by an implied contract."). The conclusion that a property interest is subject to Fourteenth Amendment protection, however, "is ultimately one of federal constitutional law." *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

Plaintiff's argument that he has a property right to performance reports relies first on the City of Philadelphia's Civil Service Regulations ("the Regulations") which provide that "[p]erformance reports shall be prepared and filed as follows . . . on each probationary employee . . . within ten days following the completion of the second and fifth months of the probationary period." *See* City of Phila. Civil Serv. Comm'n, Civil Service Regulations §§ 23.03-23.031 (Nov. 8, 2017). The Regulations further provide that "[e]ach employee shall be given a copy of the performance report covering his own work performance and attitudes . . . prior to the report

6

becoming effective." *Id*. at § 23.04. Plaintiff next relies on three internal City of Philadelphia documents in support of a property interest in performance reports. One, which is entitled "Performance Report Instructions for Classes Represented by District Council 33", states that the Regulations include a performance rating program "to require supervisors to evaluate the work and conduct of each employee," and specifically, "[p]erformance reports shall be made for all permanent and probationary employees." The second, entitled "Performance Excellence Process Guide," states that the Regulations "require[] appointing authority or designee to evaluate performance: second and fifth months of a probationary period." A third document is the Department of Records Orientation Manual which provide that "[p]robationary employees receive performance ratings at the end of their second and fifth months."

Language creating a benefit does not, however, necessarily amount to a protected entitlement: "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *See Town of Castle Rock*, 545 U.S. at 756. And, whether officials retained discretion depends on the rights-creating language. *See id*. at 756 (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989)). Here, the language of the Civil Service Regulations appears to entitle Plaintiff to performance reviews in the second and fifth-month of his probationary term of employment.[4] The Civil Service Regulations use the word "shall," and the supporting documentation – to which Plaintiff refers – reinforces the understanding that the Civil Service Regulations "require" performance reports be created for probationary employees.

Nevertheless, Plaintiff does not have a property right to these performance reports for several reasons. First, an individual entitlement to receiving a performance report does not

---

[4] Despite the language, though, both parties agree that during the ten-year period prior to Plaintiff's rejection from probation, over 595 of the 751 employees not hired from probationary employment to a permanent position did not receive evaluations.

7

"resemble any traditional conception of property" in that it does not in and of itself implicate "some ascertainable monetary value." *See id.* at 766. Second, although framed as a procedural due process issue, Plaintiff does not seek "the pre-deprivation notice and hearing that are the hallmarks of a procedural due process claim." *See Burella v. City of Phila.*, 501 F.3d 134, 146 (3d Cir. 2007). Instead, he appears to seek the provision of a performance report itself. And third, policy considerations suggest that courts should not turn the entirety of the Civil Service Regulations into actionable, constitutionally-protected property interests. *See Bishop v. Wood*, 426 U.S. 341, 349-50 (1976) ("The Federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."). Thus, although the language requires the provision of performance reports, Plaintiff has no constitutionally-protected property right to receive them.[5] Defendants' motion to dismiss Plaintiff's Procedural Due Process claim shall, accordingly, be granted.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

April 9, 2018

---

[5] Although not considered by the Third Circuit, other Circuits to consider the same or similar issues have decided that Plaintiffs do not have a property interest in their performance evaluations. *See Singh v. Dist. Council 37*, 211 F. App'x 20, 21 (2d Cir. 2006) (finding no property interest in "desire for an exceptional performance evaluation"); *Spittal v. Piperni*, 786 F.2d 1166 (6th Cir. 1986) (stating Plaintiff identified no "property or liberty interest that could be at stake in the performance evaluation."); *Gearhart v. Thorne*, 768 F.2d 1072, 1074 (9th Cir. 1985) ("Although [Plaintiff] alleges a property right in his performance evaluations, he has not alleged a constitutionally protected property interest).